AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

FILED
APR 0 3 2019
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____RM_____, DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
  ) Case No. M-19- 175 -STE
a "Coolpad" cellphone (IMEI: 862429032252478) )
a "Moto" cellphone (IMEI: 355674088957116) )
an "iPhone" cellphone (IMSI: 310120059494450) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incooprated by referenced herein.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by referenced herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 18 U.S.C. § 2118(b) | Burglary of a Business Registered with the DEA |

The application is based on these facts:

See Affidavit, attached hereto.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

GERARD DAUPHINAIS, DEA Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 4/3/19

_____
Judge's signature

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

## DESCRIPTON OF DEVICES TO BE SEARCHED

1. A black-colored "Coolpad" cellphone with pink paint on screen (IMEI: 862429032252478) ("**SUBJECT DEVICE 1**")

2. A gold-colored "Moto" cellphone (IMEI: 355674088957116) ("**SUBJECT DEVICE 2**")

3. A black-colored "iPhone" cellphone (IMSI: 310120059494450) ("**SUBJECT DEVICE 3**")

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Electronically stored information including, but not limited to: the phone directory and/or contacts list, calendar, text messages, chat messages, multimedia messages, e-mail messages, call logs, photographs, videos and data files.

## IN THE UNITED STATES DISTRICT COURT
## OR THE WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Gerard Dauphinais, a Special Agent with the Drug Enforcement Administration (DEA) Oklahoma City, Oklahoma, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have served in that capacity since 1996. I am currently assigned to the Tactical Diversion Squad (TDS) at the Oklahoma City District Office (OCDO) located in Oklahoma City, OK. In January 1997, I completed approximately sixteen (16) weeks of training at the DEA Basic Agent Academy in Quantico, Virginia that instructed your affiant on narcotics investigations, use of confidential sources, surveillance, interviews and interrogation, proper search and seizure, and arrest procedures as required to become a Special Agent with the DEA. Prior to the DEA, I was a police officer with the Los Angeles Police Department for two years and have experience investigating many types of criminal conduct.

2. During my career as a DEA Special Agent, I have investigated violations of the Controlled Substances Act involving illegal narcotics trafficking. Through these investigations and the training mentioned above, I have become familiar with investigative methods and techniques regarding drug

trafficking and money laundering. I am familiar with and have participated in standard methods of investigation, including, but not limited to, visual surveillance, questioning witnesses, the use of search and arrest warrants, the use of informants, the use of electronic surveillance, the monitoring and analysis of cellular telephone usage and data, and the use of undercover agents. I am familiar with the methods of operation and terminology used by drug traffickers as well as methods of laundering drug trafficking proceeds. I have experience debriefing defendants, witnesses, confidential sources, and other persons who have knowledge of the distribution and transportation of controlled substances. I know from training, experience, and experiences related to me by other agents that persons involved in drug trafficking frequently utilize cellular telephones to further the distribution of illicit and/or counterfeit illicit substances.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. As a Special Agent with the DEA, I am vested with the authority to investigate violations of Titles 21 and 18 of the United States Code. The facts contained in this affidavit were discovered by me or related to me by other Law Enforcement Officers.

4. I am investigating **Danielle MONSERRATE** for her part in a conspiracy to possess with intent to distribute controlled substances (21 U.S.C. § 846), for possession with intent to distribute controlled substances (21 U.S.C.

2

§ 841(a)(1), and for burglary of a business registered with the DEA (18 U.S.C. § 2118(b). This Affidavit is submitted for the purpose of securing a search warrant authorizing a search of the following cell phones: a black-colored "Coolpad" cellphone with pink paint on screen (IMEI: 8624290322252478) ("**SUBJECT DEVICE 1**"); a gold-colored "Moto" cellphone (IMEI: 355674088957116) ("**SUBJECT DEVICE 2**"); a black-colored "iPhone" cellphone (IMSI: 310120059494450) ("**SUBJECT DEVICE 3**")—as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The DEA has custody of all three **SUBJECT DEVICES** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of all three **SUBJECT DEVICES** for the items specified in **Attachment B** hereto, wherever they may be found, and to seize all items in **Attachment B** as instrumentalities, fruits, and evidence of the aforementioned crimes.

5. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience,

3

conversations with other law enforcement officers and witnesses, and review of documents and records.

## BACKGROUND OF INVESTIGATION

6. On December 3, 2017, at approximately 20:51 p.m., the Oklahoma City Police Department (OCPD) responded to a burglary alarm activation of Nichols Hills Drugs, located at 7538 Berkley Avenue, Oklahoma City, Oklahoma. Upon arrival, the OCPD responding officer observed the front door of the business had been pried open with what appeared to be a crowbar. There was blue paint transfer on the door frame and the lock to the door had been popped out of the socket. An employee of the business responded and advised that there was video surveillance but the employee was unable to get the system operational at that time. A cursory search of the location revealed several bottles of Adderall (a Scheduled II Controlled Substance) had been taken.

7. On December 5, 2017, Nichols Hills Drugs submitted a "Report of Theft or Loss of Controlled Substances" to the DEA to document the inventory taken during the burglary two days prior. According to the report, approximately 3200 pills of Hydrocodone, approximately 400 pills of Adderall, and approximately 200 pills of Amphetamines were taken from the pharmacy during the burglary. All the above pills are Schedule II Controlled Substances according to the Controlled Substances Act of 1970. OCPD conducted a follow-up interview with the owner of Nichols Hills Drugs, Arrash Asgari. Mr. Asgari related the following

4

to the OCPD. Mr. Asgari stated that when he viewed the surveillance video of the burglary, he observed a male wearing a dark hoodie and camo mask enter the pharmacy carrying an object. Mr. Asgari stated the male can be heard saying "I'm in" on a cellphone or walkie-talkie like device on the video. The male walked directly to the shelf containing the Adderall pills and began dumping them into a trash can. The male then proceeded to the shelf containing the Hydrocodone pills and dumped them into the trash can. The male then exited the pharmacy after only being inside for less than a minute.

8. OCPD also acquired photographs of a suspect vehicle (a blue pickup truck resembling a Ford F-150) from video surveillance taken form the bank next door to the pharmacy. In one of the photographs, the truck appeared to have its tail gate down while driving away from the location at the time of the burglary of the pharmacy.

9. On December 9, 2017, at approximately 1:26 p.m., Phelps County Sheriff Department (PCSD) conducted a traffic stop on a blue Ford F-150 pickup truck for a traffic violation. At the time of the traffic stop, the Ford F-150 was towing a white passenger vehicle, which was determined to be a rental car. Upon contacting the F-150, PCSD identified the driver as Jeremy BALLEW and the passenger as **MONSERRATE**. BALLEW identified **MONSERRATE** as his girlfriend and advised the PCSD that he and **MONSERRATE** were going to visit **MONSERRATE**'s sister in St. Louis, however neither of them knew the sister's

5

address in St. Louis. Also, BALLEW stated they would be visiting for five days and staying in a hotel while visiting. However, **MONSERRATE** stated they would only be staying one night and then returning home. When advised it was unusual to see a rental car being towed, BALLEW advised the PCSD that **MONSERRATE** (in whose name the vehicle was rented) would use the rental car to go shopping while BALLEW would keep the F-150 to "hang out" with **MONSERRATE**'s girlfriends' husbands. The PCSD received consent to search the F-150 and the white rental car. During the search, the PCSD discovered two sandwich baggies containing numerous pills. BALLEW told the PCSD the pills were morphine pills and that they were given to him but he did not say from whom. Based on the discovery of the pills, BALLEW and **MONSERRATE** were transported to the PCSD for further investigation.

10. Enroute to the PCSD, BALLEW agreed to be honest if **MONSERRATE** did not get arrested. After being advised of his Miranda Rights, BALLEW made the following voluntary statements. BALLEW stated they were enroute to the St. Louis area to commit pharmacy burglaries. BALLEW stated that his method of operation was to "Google" the nearest pharmacy, wait until sun down, and then make entry into the pharmacy using a crow bar. BALLEW stated the white rental car was operated by **MONSERRATE** to act as a lookout during the burglary. BALLEW then gave a written statement describing his burglary of Nichols Hills Drugs which BALLEW referred to as his "most recent" burglary. BALLEW stated

6

he was unaware of how many burglaries he had committed, but stated it was definitely over 20 burglaries. BALLEW stated he has also committed burglaries in Kansas City, Missouri and Illinois. BALLEW confirmed that the pills in the second baggie were from the "last Oklahoma burglary" which BALLEW stated was Nichols Hills Drugs. BALLEW stated he would cooperate with the OCPD regarding the Nichols Hills Drug burglary and that he left his tailgate down on his truck (per OCPD seen in video as truck departed location) to conceal the license plate of the blue truck.

11. The blue F-150 BALLEW was driving at the time of his traffic stop by PCSD matched the blue pickup truck seen on video surveillance leaving the scene of the Nichols Hills Drug burglary. In his written statement about the burglary of Nichols Hills Drugs, BALLEW admitted to prying open the front door of the pharmacy. BALLEW ran to the first shelf and took the Adderall and then ran to the second shelf to take the Hydrocodone. BALLEW stated he took a "couple thousand Hydrocodone".

12. In paragraph 10, BALLEW admitted that the white rental car, rented by **MONSERRATE**, was operated by **MONSERRATE** and used as a lookout when BALLEW commits a burglary. In paragraph 7, Mr. Asgari stated the video surveillance system captures the hooded male (BALLEW based on his admission) enter the pharmacy and exclaim "I'm in" on a communication device which indicates BALLEW was communicating with another individual outside of the

7

pharmacy to advise that individual that he was inside the pharmacy. Based on BALLEW's statement that **MONSERRATE** uses the white rental car to act as a lookout for him during burglaries and that Nichols Hills Drugs was his most recent burglary, and the fact that BALLEW was towing the white rental vehicle behind the blue Ford F-150 when he we was detained by the PCSD six days later, I believe BALLEW was communicating with **MONSERRATE** on one of the **SUBJECT DEVICES** when he stated "I'm in" as she was acting as the lookout during the Nichols Hills Drugs burglary. I believe **MONSERRATE** was sitting in the white vehicle outside of the pharmacy and acting as the lookout for BALLEW during the burglary of Nichols Hills Drugs while using one of the "**SUBJECT DEVICES**".

13. On February 19, 2019, BALLEW and **MONSERRATE** were indicted by a Grand Jury in the Western District of Oklahoma (WDOK) for violating federal statutes 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances) and 21 U.S.C. § 841(a)(1) (for possession with intent to distribute controlled substances). On March 19, 2019, the Grand Jury in the WDOK issued a superseding indictment against BALLEW and **MONSERRATE** additionally charging them with violating federal statute 18 U.S.C. § 2118(b) (burglary of a business registered with the DEA).

14. On March 16, 2019, **MONSERRATE** was arrested by the Alvarado, Texas Police Department pursuant to the arrest warrant issued against her by the WDOK. Pursuant to her arrest, three glass tubes, all containing a white

8

substance that field tested positive for methamphetamine, were seized from inside the vehicle **MONSERRATE** was driving at the time of her arrest. Also in her possession were the three **SUBJECT DEVICES**, one of which **MONSERRATE** was utilizing at the time of the Nichols Hills Drugs burglary in which she was identified as the lookout during the burglary by **BALLEW**.

15. Based on my training and experience, as well as the facts presented above, I believe **MONSERRATE** was using one or more of the **SUBJECT DEVICES** while acting as the "lookout" outside Nichols Hills Drugs while **BALLEW** burglarized the pharmacy on December 3, 2017. Further, I also believe it is clear that **MONSERRATE** utilizes one or more of the **SUBJECT DEVICES** to further the conspiracy with **BALLEW** to possess with intent to distribute controlled substances.

16. Based upon my training and experience, I am aware that individuals involved in trafficking illegal narcotics often use cell phones in furtherance of their drug trafficking business. Furthermore, I also know, based on my training and experience, that these cell phones often contain electronically stored information which constitutes evidence, fruits, and instrumentalities of the drug-trafficking offenses being committed, including, but not limited to, contact lists, calendars, electronic messages, e-mail messages, chat logs, photographs, videos, notes, and data files. Consequently, I submit there is probable cause to believe that the **SUBJECT DEVICES**, which were recovered from **MONSERRATE** (who, at the

9

time of her arrest, was in possession of methamphetamine), will contain evidence of drug trafficking.

## CONCLUSION

12.     Based on the above information, there is probable cause to believe that violations of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. 2118(b) have occurred, and that evidence, fruits, and instrumentalities of this offense are located on the **SUBJECT DEVICES**.  Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICES**, authorizing the seizure of the items described in **Attachment B**.

_____
GERARD DAUPHINAIS
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me this 3rd day of April, 2019.

_____
SHON T. ERWIN
United States Magistrate Judge

# ATTACHMENT A

## DESCRIPTON OF DEVICES TO BE SEARCHED

1. A black-colored "Coolpad" cellphone with pink paint on screen (IMEI: 862429032252478) ("**SUBJECT DEVICE 1**")

2. A gold-colored "Moto" cellphone (IMEI: 355674088957116) ("**SUBJECT DEVICE 2**")

3. A black-colored "iPhone" cellphone (IMSI: 310120059494450) ("**SUBJECT DEVICE 3**")

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Electronically stored information including, but not limited to: the phone directory and/or contacts list, calendar, text messages, chat messages, multimedia messages, e-mail messages, call logs, photographs, videos and data files.